**Daniel MILLER, Plaintiff,**

v.

**YELLOW FREIGHT SYSTEMS, INC., Defendant.**

**Civ. A. No. 89–1651.**

United States District Court, W.D. Pennsylvania.

Feb. 22, 1991.

Daniel Miller, West Mifflin, Pa., pro se.

Jeffrey Ivan Pasek, Philadelphia, Pa., Charles H. Saul, Pittsburgh, Pa., for defendant.

**1076**

## MEMORANDUM ORDER

D. BROOKS SMITH, District Judge.

Before the Court at this time is defendant Yellow Freight Systems, Inc.'s motion for summary judgment, on which we deferred ruling to allow plaintiff Daniel Miller an opportunity to present evidence to establish that there remains a genuine issue of material fact in his claim that he was discharged because of Yellow Freight's racial discrimination. See *Miller v. Yellow Freight Systems, Inc.,* C.A. No. 89–1651, slip opinion at 10–11 (W.D.Pa. August 8, 1990). Having considered the evidence submitted in Plaintiff's Supplemental Affidavit, we grant defendant's motion for summary judgment.

Federal Rule of Civil Procedure 56(c) requires us to render summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "[T]his standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). (emphasis in original).

In order for a moving party to prevail on a motion for summary judgment, the party must show two things: (a) that there is no genuine issue as to any material fact, and (b) that the party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c), see 7 Wright & Miller, *Federal Practice and Procedure;* Civil Section 2712. Thus, the Court does not decide issues of fact on a Rule 56 motion, but only determines whether there are issues to be tried. *Janek v. Celebrezze,* 336 F.2d 828 (3d Cir.1964).

 A fact is "material" if proof of its existence or non-existence would affect the outcome of the lawsuit under the law applicable to the case. *Anderson, supra* 477 U.S. at 248, 106 S.Ct. at 2510; *Levendos v.*

*Stern Entertainment, Inc.,* 860 F.2d 1227, 1233 (3d Cir.1988). An issue of material fact is "genuine" if the evidence is such that a reasonable fact-finder might decide in favor of the non-moving party. *Anderson, supra* 477 U.S. at 257, 106 S.Ct. at 2514–15; *Hankins v. Temple University,* 829 F.2d 437, 440 (3d Cir.1987); *Equimark Commercial Finance Co. v. C.I.T. Financial Services Corp.,* 812 F.2d 141, 144 (3d Cir.1987). In determining whether an issue of material fact does exist, all inferences must be drawn against the moving party. *White v. Westinghouse Electric Co.,* 862 F.2d 56, 59 (3d Cir.1988); 6 J. Moore, Moore's Federal Practice ¶ 56.04[2].

 When a motion for summary judgment is properly supported, as it is here, by Yellow Freight's attachment of Miller's deposition testimony, the non-moving party cannot defeat the motion by resting on the bare allegations contained in his pleadings. That is, once the moving party has satisfied its burden of identifying evidence which demonstrates that absence of a genuine issue of material fact, *see Childers v. Joseph,* 842 F.2d 689, 694 (3d Cir.1988), the non-moving party is required by Federal Rule of Civil Procedure 56(e) to go beyond the pleadings by way of affidavits, depositions, answers to interrogatories, or otherwise, in order to demonstrate specific material facts which give rise to a genuine issue. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). When Rule 56(e) shifts the burden of proof to the non-moving party, that party must produce evidence to show the existence of every element essential to its case which it bears the burden of proving at trial. *Equimark, supra* at 144. Naturally, however, if "the evidentiary matter in support of the motion does not establish the absence of a genuine issue, summary judgment must be denied even if no opposing evidentiary matter is presented." Advisory Committee Notes to Fed.R. Civ.P. 56(e) (1963 Amend.).

What issues of fact are material is dictated by the substantive law. *Anderson, supra* 477 U.S. at 248, 106 S.Ct. at 2510. In a Title VII race suit, plaintiff must show that

there is a material issue of fact from which an inference of disparate treatment based on race can be drawn. He may do this by direct evidence of a racially discriminatory animus on the part of the employer, or if he is a member of a protected class, by the indirect burden shifting scheme established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

▓ Miller presents no direct evidence of discriminatory animus. We therefore turn to the plaintiff's establishment of a prima facie case and the defendant's asserted business reasons for its actions. As tailored to the facts of the individual case, *see McDonnell Douglas, supra* at 802 n. 13, 93 S.Ct. at 1824 n. 13; *Furnco Construction Corp. v. Waters*, 438 U.S. 567, 575–76, 98 S.Ct. 2943, 2948–49, 57 L.Ed.2d 957 (1978), Miller must show: (1) that he belongs to a protected class; (2) that he was qualified for the job from which he was discharged; (3) that he was discharged; and (4) that other persons not in a protected class who were guilty of the same work infractions were not discharged. The burden of production then shifts to Yellow Freight to articulate a nondiscriminatory reason for the discharge; if the defendant can do so, the plaintiff must set forth sufficient evidence to allow a factual inference that the asserted reasons are the pretext for discrimination.

Unlike most burden shifting cases, where the establishment of a prima facie case is routine and the focus is on the interplay between the asserted business reasons for the employers action and the evidence of pretext, *see e.g. Healy v. New York Life Insurance Co.*, 860 F.2d 1209, 1214 n. 1 (3d Cir.1988); *Carter v. Westinghouse*, 703 F.Supp. 393 (W.D.Pa.) *aff'd* 877 F.2d 53 (3d Cir.1989), Miller meets a substantial evidentiary hurdle in the prima facie case. This is so because in order to gain a prima facie inference of discriminatory treatment, he must show that other Yellow Freight employees were not similarly disciplined for workplace rule infractions. *See Bellissimo v. Westinghouse Electric Corp.*, 764 F.2d 175, 180 (3d Cir.1985) ("A discharge is not per se disparate treatment. It violates Title VII's commands only if it is made on a basis that would not result in the discharge of a male employee.") *See also Jones v. Gerwens*, 874 F.2d 1534, 1540 (11th Cir. 1989). It is not open to Miller to relitigate whether he was guilty of the April 29, 1986 workplace rule violations which Yellow Freight gives as the basis for his discharge because the facts of those violations were decided adversely to him in the state unemployment compensation proceeding.[1] Cf.

---

1. As we pointed out in our opinion of August 8, 1990, slip opinion at 6–7, although there is no claim preclusion resulting from the Commonwealth Court's affirmance of the unemployment compensation proceeding, there is issue preclusion where Pennsylvania law would bar relitigation of factual issues. Judge Mencer of this Court, while a judge on the Commonwealth Court, wrote the leading opinion establishing Pennsylvania's law of issue preclusion:

 Where a question of fact essential to the judgment is actually litigated and determined by a final judgment, the determination is conclusive between the parties in a subsequent action on a different cause of action....

 *McCarthy v. Township of McCandless*, 7 Pa. Cmwlth. 611, 619, 300 A.2d 815, 820 (1973). For the Pennsylvania courts to apply the doctrine, therefore, the factual issues must be: (1) identical; (2) actually litigated; (3) essential to the former judgment; and (4) material to the former adjudication. *Commonwealth, Department of Public Welfare v. Divine Providence Hospital*, 101 Pa.Cmwlth. 248, 516 A.2d 82, 86

 (1986), *app. dismissed* 518 Pa. 591, 544 A.2d 1323 (1988). See also *Kelley v. TYK Refractories Co.*, 860 F.2d 1188, 1196–97 (3d Cir.1988). Compare, for the nearly identical standards for preclusion of legal issues, *O'Leary v. Liberty Mutual Insurance Co.*, 923 F.2d 1062, 1065–66 (3rd Cir.1991):

 Under Pennsylvania law, which adopts the requirements of the Restatement (Second) of Judgments, a prior determination of a legal issue is conclusive in a subsequent action between the parties on the same or a different claim when (1) the issue was actually litigated; (2) the issue was determined by a valid and final judgment; and (3) the determination was essential to the judgment. *See* Restatement (Second) of Judgments § 27 (1982); *Clark v. Troutman*, 509 Pa. 336, 340, 502 A.2d 137, 139 (1985).

 . . . .

 An issue is "actually litigated" when it "is properly raised, by the pleadings or otherwise, and is submitted for determination, and

*Jackson v. University of Pittsburgh,* 826 F.2d 230, 234 (3d Cir.1987) (plaintiff's deposition created genuine dispute of fact concerning correctness of employer's allegations of performance deficiencies).

Plaintiff submits in support of his *prima facie* case a six paragraph affidavit and approximately 82 pages of exhibits. His affidavit states that

> [d]uring the course of my employment for Yellow Freight, I was continually subjected to disparate treatment, less favorable treatment than was extended to Caucasian employees, and was the subject of false charges in order to effectuate the termination of my employment. All of these actions by Yellow Freight were purposefully done because of my race (Black).

A plaintiff's general and conclusory "allegations alone are insufficient to establish a material issue of fact." *Sola v. Lafayette College,* 804 F.2d 40, 45 (3d Cir.1986) (affirming summary judgment for defendant in sex discrimination case). Plaintiff's exhibits in support of his affidavit fail to show any factual support for the conclusions asserted.

The exhibits can be divided into three parts. The first section consists of twelve typewritten pages in which the plaintiff gives a narrative of his disputes with Yellow Freight management personnel between May, 1982 and May, 1986. The second portion of the exhibit comprises 63 pages of correspondence, safety regulations, workers compensation notices, and union-management communications regarding disciplinary hearings for Daniel Miller. This second portion of the exhibit does not even mention race, and contains only one piece of information which is relevant to a comparison of plaintiff to any other person. The final portion of the exhibit is a copy of two complaints filed by plaintiff with the Pennsylvania Human Relations Commission. The first, E–35420D, appears to have been filed on December 9, 1985. The second, E–36723D, appears to have been filed in May, 1986. The two PHRC complaints contain an account of Daniel Miller's employment grievances which parallels the typewritten account of the first twelve pages of his exhibit, with the additional charge in PHRC Complaint No. E–36723D that after the filing of the first PHRC Complaint, Yellow Freight retaliated against Miller.

■ The first portion of plaintiff's exhibits and Daniel Miller's first PHRC complaint, Complaint No. E–35420D, contain allegations of discriminatory treatment or disciplinary suspensions in May and November, 1982; February, September, and November, 1983; August, 1984; and January and November, 1985. Litigation of all of these incidents except for the November 12, 1985 suspension is time-barred by 42 U.S.C. § 2000e–5(e) because they took place more than 300 days before the December 9, 1985 filing. See *Seredinski v. Clifton Precision Products Co.,* 776 F.2d 56, 61 (3d Cir.1985) (240 days where there is deferral to a state agency which does not complete its proceedings within 60 days of filing).

■ With respect to the November 12, 1985, incident in which plaintiff's discharge for failure to sign a hazardous materials warning form was converted to a thirty-day suspension, plaintiff alleges that he was treated more harshly than a white driver, Richard Hoolahan. The evidence which plaintiff submits, however, indicates that Hoolahan was warned about his behavior on November 12, 1985, because he had been insubordinate on the morning of November 12, 1985, when he was told to sign the hazardous materials handling form and did not sign the form until the end of the day after speaking to his union office. *See* Letter of November 15, 1985. Miller, by contrast, was suspended for refusing to sign the form after requests on September 2, 23, and 30, 1985, and November 4 and 12, 1985. *See* Minutes of Meeting of December 4, 1985. Miller admits that he did not sign the form until November 14, 1985. Additionally, as the November 18, 1985 letter to Daniel Miller mentions, the discharge (later suspension) was also influenced by

is determined." Restatement (Second) of Judgments § 27 comment d, at 255 (1982).

Daniel Miller's work record. Miller recognizes this himself, because he protests, on page 6 of the first portion of the exhibits, that his work record included only one warning within the relevant time period, on October 16, 1985. *See* Letter of October 16, 1985 (warning letter). Plaintiff fails, however, to present any evidence that Richard Hoolahan had any prior disciplinary record. Different disciplinary measures taken in response to different acts of insubordination by employees with different work records do not constitute disparate treatment for purposes of establishing a prima facie case.

■ Plaintiff's discharge came after an incident on April 29, 1986, involving a run from the Greensburg terminal to a destination in Indiana, PA, approximately 45 miles away. *See Miller v. Commonwealth, Unemployment Compensation Board of Review*, No. 2812 C.D.1986, slip opinion (Pa. Cmwlth. September 23, 1988). Because the requirements of Pennsylvania's fact preclusion doctrine are met, plaintiff cannot challenge the facts underlying his discharge. Plaintiff admitted in his deposition that he did not know of anyone who had been found guilty of violating Yellow Freight's call-in and break rules who was not disciplined,[2] nor has he found any example of such favoritism during discovery.

■ The implementation of neutral rules does not constitute racial discrimination. See *Pollard v. Rea Magnet Wire Co.*, 824 F.2d 557, 560 (7th Cir.1987) *cert. denied* 484 U.S. 977, 108 S.Ct. 488, 98 L.Ed.2d 486 (1988). Miller does not even support with evidence the argument he half-advances in his deposition, that his suspension and discharge under the work rules was unfair because the rule was newly in operation. Miller deposition, 20–22. *See Jones v. Gerwens, supra*, 874 F.2d at 1541–42 (evidence which showed prior tolerance of infractions by white employees might support inference that new work rule was enforced discriminatorily against plaintiff). Because plaintiff has presented no evidence that there were other employees who committed an infraction of "comparable seriousness", *McDonnell Douglas v. Green, supra*, 411 U.S. at 804, 93 S.Ct. at 1825, much less that they were treated differently, summary judgment must be entered in favor of the defendant on plaintiff's discrimination claim.

■ We must also grant summary judgment against Daniel Miller on the retaliation claim advanced in plaintiff's amendment of his complaint. Plaintiff must show some disputed issue of fact relevant to the two elements of a Title VII retaliation claim, which are: (1) that the plaintiff had a reasonable belief that the employer was engaged in an employment practice unlawful under Title VII; and (2) that the employer retaliated against the plaintiff for protesting against that practice. *Drinkwater v. Union Carbide Corporation*, 904 F.2d 853, 865 (3d Cir.1990) *citing Hicks v. ABT Associates, Inc.*, 572 F.2d 960, 967–69 (3d Cir.1978). Plaintiff has provided no evidence that his employer was discriminating against him based on race. While a plaintiff need not prove the

2. BY MR. PASEK:
Q. Mr. Miller, are you aware of any city driver employed at the Greensburg terminal of Yellow Freight who was not disciplined by Yellow Freight when he did not depart from the terminal at an acceptable time?
A. No.

 . . . . .

Q. Are you aware of any city driver at the Greensburg terminal who did not seek permission prior to taking an unscheduled break and took that unscheduled break prior to his first and only stop where that city driver was not disciplined by the company?
A. The maintenance of standard was only in effect one day. They posted it on the 29th and used it against me on the 30th.

Q. Is the answer to the question yes or no?
A. It's no.

 . . . . .

Q. Mr. Miller, are you aware of any city driver at the Greensburg terminal of Yellow Freight who took an excessive amount of time to return to the company's terminal who was not disciplined?
A. No.
Q. Are you aware of any city driver at the Greensburg terminal of Yellow Freight who violated the call-in rule in a case involving delay who was not disciplined?
A. No.
Miller deposition 19–20, 23, 24 (Defendant's Motion for Summary Judgment, Exh. "D").

merits of his discrimination claim in order to state a claim for retaliation, Daniel Miller's failure to produce evidence in support of even a colorable claim of racial discrimination makes his belief that Yellow Freight was discriminating against him unreasonable.

█ Plaintiff has also failed to present sufficient evidence to create a question of fact concerning the second prong, that his subsequent discharge was caused by or even influenced by his prior PHRC complaint. Although he could have done so very simply through interrogatories or requests for admissions, plaintiff does not even present evidence that the person responsible for his suspension in November, 1985, Russell Trapp, or the person responsible for his eventual discharge on April 30, 1986, Alan P. Kipple, were aware of the PHRC complaint. Plaintiff alleges in PHRC Complaint No. E–36723D that a fact-finding conference was scheduled for February 18, 1986, at the Pittsburgh Regional Office of the PHRC to discuss the allegations of his earlier PHRC complaint and that no one from Yellow Freight attended the meeting. This is insufficient to allow an inference that Kipple was notified of the fact-finding conference and based his April 30, 1986 discharge decision in any way upon it. Plaintiff establishes only that his discharge came after the filing of PHRC complaint, and mere temporal sequence does not allow an inference of causation.[3]

Summary judgment will be entered for the defendant. An appropriate order will be entered.

---

**3.** Judge Becker, in *Healy v. New York Life Ins. Co., supra,* 860 F.2d at 1215–16, made this point very clearly in rejecting a similar argument that a performance evaluation prepared three weeks after the filing of an EEOC age discrimination charge could be presumed to have been affected by the filing of the charge:

> *Post hoc* explanations, like any self-helpful statement made after the initiation of a lawsuit, may be to some degree suspect. However, the mere fact that a defendant relies on

a *post hoc* evaluation does not in and of itself create a factual dispute about whether the evaluation is pretextual. To the extent that the dissent argues that a *post hoc* justification *ipso facto* creates a pretext, it is plainly wrong. Unless the plaintiff introduces counter-affidavits and argumentation that demonstrate that there is reason to disbelieve this particular explanation, there is no genuine issue of material fact.